IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | : | Case No. 1:12-cv-846 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | |
| | : | ORDER DENYING DEFENDANTS' |
| MIKE DEWINE, *et al.*, | : | MOTIONS TO DISMISS (Docs. 12, 13) |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff Jane Doe pled guilty in Ohio to unlawful sexual conduct with a minor and has been classified by the State as a sexual predator. Because she has been classified as a sexual predator, Doe is required by Ohio Rev. Code § 2950.07(B)(1) to register with the sheriff as a sex offender four times a year for the rest of her life, and the sheriff provides written notice to the community that includes Doe's name, address, offense, predator status, and photograph. Because of her predator classification, Doe is prohibited from living within 1,000 feet of a school.

Doe asserts that she can prove that she is no longer likely to commit another sex offense and presents no realistic risk to the public. However, Ohio law does not afford her an opportunity to demonstrate that she is no longer a threat to the public. Doe claims that the State's failure to provide her with a hearing to demonstrate that she is no longer dangerous violates her procedural and substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

The Defendants in this case, former Hamilton County Sheriff Simon Leis, Jr., Ohio Attorney General Mike DeWine, and Ohio Bureau of Criminal Identification and Investigation

("BCII") Superintendent Tom Stickrath, have filed motions to dismiss the case in its entirety. (Docs. 12 and 13.) For the reasons that follow, the Court DENIES Defendants' Motions.

I.   **BACKGROUND**[1]

In 2006, Doe pled guilty and was convicted of one count of unlawful sexual conduct with a minor. After a court hearing, Doe was classified as a sexual predator. "Sexual predators" were statutorily defined as persons "likely to engage in the future in one or more sexually oriented offenses." Ohio Rev. Code § 2950.01(E) (2006).

As a classified sexual predator, Doe must register with the sheriff where she lives, works, and attends school every ninety days until her death. Each registration carries with it a cost of $25, thus Doe is required to pay $100 per year in registration fees for the rest of her life. In addition to providing the sheriff with information about her name, aliases, scars, tattoos, height, weight, eye color, home address, name and address of schools and employers, and a photograph, Doe also must report the license plate of her car and where her car is parked.

Both the Hamilton County Sheriff and the Ohio BCII maintain internet registries that publish Doe's conviction, her sex offender classification, a description of her victim, her physical characteristics, and her home address. The County's registry also includes Doe's employer and her employment address. The Sheriff's Office provides community notification about sexual predators, including Doe. Specifically, the sheriff distributes notice that includes Doe's name, photograph, home and work addresses, the crime for which she was convicted, and her predator status to the following entities or individuals located within 1,000 feet of her residence: neighbors, building managers, schools, preschools, daycare centers, children services agencies, and volunteer organizations that serves minors or other vulnerable individuals. The notice must

---

[1] Unless otherwise noted, background facts are taken from Plaintiff's Complaint, Doc. 1.

2

be posted in all common entryways in any apartment building within the 1,000-feet notification zone. Doe is prohibited from living within 1,000 feet of a school, and she is prohibited from living in subsidized housing. Doe, who has four children, is having difficulty finding housing because of her predator status. If she did not have a lifetime duty to register, Doe would be eligible for subsidized housing.

Since her guilty plea and classification as a sexual predator in 2006, Doe successfully completed sex offender treatment by a psychologist qualified to treat sex offenders. This doctor evaluated Doe and concluded that she now has a very low re-offense risk. Doe was evaluated by a second treatment provider who also concluded that Doe was highly unlikely to commit another sex offense. Doe has not committed any additional sex offenses or any other crimes. Doe wants an opportunity to demonstrate to her sentencing court that she is no longer a dangerous, high-risk, sexually oriented offender.

Prior to 2003, Doe would have had the opportunity to do so, as former Ohio Rev. Code § 2950.09(D)(1) entitled predators to a hearing with the sentencing judge to prove she or he was no longer dangerous. Specifically, an offender could request a hearing one year before release from incarceration or one year after conviction if the offender was not incarcerated. After the initial filing, the petition could be renewed every five years. If the judge determined that the offender was a low risk, the offender was reclassified as a "sexually oriented offender" and ordered to register once a year for a total of ten years under former Ohio Rev. Code § 2950.07(B)(1). However, in 2003, Ohio's General Assembly eliminated a predator's right to have a hearing to prove he or she is no longer dangerous. Now, the law prohibits a judge from removing or

terminating the predator classification and lifetime registration duty under Ohio Rev. Code §§ 2950.07(B)(1) and 2950.09(D)(2).[2]

Doe sued three defendants in this action: Mike DeWine in his official capacity as Ohio Attorney General and supervisor of the BCII's superintendent (the "Attorney General"), Tom Stickrath in his official capacity as BCII Superintendent (the "Superintendent"), and Simon Leis, Jr. in his official capacity as Hamilton County Sheriff (the "Sheriff"). She requests that this Court declare that Ohio Rev. Code § 2950.07(B)(1) violates her substantive and procedural due process rights, order that a hearing be scheduled in the sentencing court to determine whether she is currently dangerous, and award her attorney's fees and costs.

The Sheriff has filed a motion to dismiss Doe's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that it fails to state a claim upon which relief may be granted and pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that the suit fails for lack of subject-matter jurisdiction. The Attorney General and the Superintendent likewise move the Court under Fed.

---

[2] In 1995, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, better known as "Megan's Law." *State v. Bodyke*, 933 N.E.2d 753, 757 (2010). Megan's Law required states to adopt registration and community-notification provisions overseeing sex offenders or risk losing federal funds. *Id*. Subsequently, in 1996, Ohio's General Assembly enacted a version of Megan's Law, which repealed an earlier version of Ohio Rev. Code Chapter 2950, and thus created Ohio's first comprehensive registration and classification system for sex offenders. *Id*.

Under Ohio's Megan's Law, the sentencing judge classified an offender as either a "sexually oriented offender," "habitual sex offender," or "sexual predator," each respectively having a higher risk of reoffending. Although Ohio revised its sex offender statute in 2007 to comport with the federal Adam Walsh Act, the Ohio Supreme Court has determined that the new classification scheme cannot constitutionally be applied to sex offenders already classified under Megan's Law. *Id*. at 766. Thus, former Ohio Rev. Code Chapter 2950, Megan's Law as amended in 2003, applies to Doe. The 2003 version of Ohio Rev. Code § 2950.09(D)(2), in effect in 2006 when Doe was classified, provides:

> If an offender who has been convicted of or pleaded guilty to a sexually oriented offense is classified a sexual predator pursuant to division (A) of this section. . ., the classification or adjudication of the offender as a sexual predator is permanent and continues in effect until the offender's death and in no case shall the classification or adjudication be removed or terminated.

Thus, under the applicable statute, Doe's classification as a sexual predator is permanent.

4

R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief can be granted. Both motions assert that Defendants are arms of the state and therefore are entitled to immunity under the Eleventh Amendment to the U.S. Constitution. Defendants additionally argue that the Complaint does not present a justiciable controversy and that reopening Doe's case would violate the separation of powers and res judicata doctrines.

## II.     STANDARD OF LAW

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Fed. R. Civ. P. 12(b)(1) allows a party to move to dismiss a complaint for lack of subject-matter jurisdiction. Rule 12(b)(1) motions to dismiss based on subject-matter jurisdiction generally come in two varieties—those that attack the complaint on its face and those that attack the existence of subject-matter jurisdiction in fact. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A facial attack on subject-matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject-matter jurisdiction, and the trial court takes the allegations as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, the party challenges the actual existence of the jurisdiction even though the complaint contains the formal allegations necessary to invoke jurisdiction. *RMI*

*Titanium*, 78 F.3d at 1134–35.  When the Court reviews a factual attack on subject-matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Under both forms of attack, the plaintiff has the burden of proving the existence of subject-matter jurisdiction.  *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  Here, Defendants do not dispute the truthfulness of the facts alleged but rather attack the facial sufficiency of the Complaint.  Accordingly, the applicable standard of review is that employed under Rule 12(b)(6).  *Ohio Nat'l Life Ins.*, 922 F.2d at 325.

### III. ANALYSIS

Doe brings this action under the federal civil rights statute, 42 U.S.C. § 1983.  Section 1983 is not itself a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  To establish a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law."  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

Doe claims that her rights to substantive and procedural due process guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution are being violated by the Attorney General, the Superintendent, and the Sheriff in their official capacities.  The Eleventh Amendment to the United States Constitution generally proscribes suits in federal court against states and state officers acting in their official capacities.  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 334 (6th Cir. 2000).[3]  Thus, the

---

[3] The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

first issue for resolution is whether Eleventh Amendment immunity applies to each named Defendant in this case and, if so, whether any exceptions to that immunity apply such that the suit might go forward.

### A. Eleventh Amendment Immunity

The Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993)). The prohibition extends to suits against state officials sued in their official capacities because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Plaintiff in this case brings her suit against the Attorney General and Superintendent in their official capacities. Because these individuals are state officials, they are entitled to immunity under the Eleventh Amendment unless an exception applies. Doe contends that the exception to Eleventh Amendment immunity established by the Supreme Court in *Ex Parte Young*, 209 U.S 123 (1908) applies. The *Young* Court determined

> that individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Id*. at 155–56. "The theory of *Young* was that an unconstitutional statute is void . . . and therefore does not 'impart to [the official] any immunity from responsibility to the supreme

authority of the United States.'" *Green v. Mansour*, 474 U.S. 64, 68 (1985) (quoting *Young*, 209 U.S. at 160)).

Whether *Young* applies and permits a lawsuit to proceed against state officials depends in part on the nature of the relief sought:

> *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation.

*Papasan v. Allain*, 478 U.S. 265, 277–78 (1986). Because the *Young* exception only applies to claims against state officials who continue to violate federal law by enforcing unconstitutional state laws, a plaintiff may not use the exception to obtain compensatory relief. Rather, a suit against a state official in his official capacity can go forward notwithstanding the Eleventh Amendment's jurisdictional bar only where the suit seeks prospective injunctive relief to end a continuing constitutional violation. *Green*, 474 U.S. at 68.

Doe asserts that Defendants are violating her procedural due process rights by publicly proclaiming she is currently dangerous without giving her an opportunity to prove that she is not. She additionally claims that Defendants are violating her substantive due process rights by disseminating information about her that is false—namely, that she is likely to engage in the future in sexually oriented offenses—and that this deprives her of significant liberties such as housing choices and privacy. She seeks prospective relief in the form of a declaration that Ohio Rev. Code § 2950.07(B)(1) is unconstitutional as applied to her and in the form of a hearing in the sentencing court to determine whether she is currently dangerous. The Court finds that the

*Young* exception to Eleventh Amendment immunity permits Doe to pursue this action because it seeks relief that would serve to bring an end to an alleged ongoing violation of federal law. *See Papasan*, 478 U.S. at 278 ("relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment"); *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (internal quotation marks omitted).

That Doe seeks injunctive relief is only one aspect of what is required for the *Young* exception to apply. In addition, the state officer being sued must have an actual connection to the allegedly unconstitutional statute's enforcement and be "about to commence proceedings" under the challenged statute. *Young*, 209 U.S. at 155–56. The officer's active involvement is necessary because otherwise, "the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general." *Id*. at 157. Accordingly, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (quoting *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993)). Rather, "'*Young* applies only where the underlying authorization upon which the named official *acts* is asserted to be illegal.'" *Id*. at 1417 (quoting *Papasan*, 478 U.S. at 277). The state officer's connection does not have to be the primary authority to enforce the challenged law. *281 Care Comm. v. Arneson*, 638 F.3d 621, 633

9

(8th Cir. 2011). It is sufficient if the state law grants the state officer some authority to act in furtherance of the challenged law. *Id.*

The Defendants in this case claim that the *Young* exception to immunity does not apply to them because they do not have any connection to the enforcement of Ohio's Sex Offender Registration and Notification ("SORN") scheme and, even if they did, they have not threatened to commence proceedings against Doe. They assert that this defeats the application of the *Young* exception.

### 1. Attorney General and Superintendent

The Attorney General and the Superintendent assert that they have no duty to enforce SORN. They state that their duties under SORN are administrative only and that enforcement of the scheme is within the province of the county prosecutor and other local officials. Relying on *Children's Healthcare v. Deters*, 92 F.3d 1412 (6th Cir. 2006), they state that state officials who are not clothed with a duty to enforce the specific statutes should be dismissed on Eleventh Amendment grounds.

*Children's Healthcare* is readily distinguishable from this case. There, the Sixth Circuit held that an action against the Ohio Attorney General was precluded by the Eleventh Amendment; however, the plaintiffs in that case were not complaining of any action by the Attorney General, nor were they seeking to enjoin the enforcement of any statute. *Id.* To the contrary, the plaintiffs were testing the constitutionality of a state law that exempted individuals who treat their children only by "spiritual means" from the duty to provide adequate care to children and from prosecution for failure to provide such care. *Id.* at 1413. In other words, the plaintiffs were not complaining of *action* but of *inaction—*that is, the failure of law enforcement

10

to prosecute individuals who believed only in spiritual treatment of their children and did not allow them to receive medical treatment. The Attorney General in that case "did not threaten to commence and was not about to commence proceedings against the plaintiffs, much less proceedings to enforce an allegedly unconstitutional act," because the statute being challenged *could not* be enforced against the plaintiffs by the Attorney General. *Id*. at 1416. Thus, while *Children's Healthcare* discusses the *Young* requirement that the official threaten and be about to commence proceedings, the "imminence" prong was not what precluded *Young*'s application to that case. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (noting that the Sixth Circuit in *Children's Healthcare* was less concerned with the imminence of any enforcement action than with the issue of suing the proper defendant).

By contrast, the Sixth Circuit has applied *Ex Parte Young* to permit actions against state officials who have enforcement responsibilities under challenged state statutes, as in this case. For example, in *Zielasko v. Ohio*, 873 F.2d 957 (6th Cir. 1989), the plaintiffs sought to have the court enjoin future enforcement of an Ohio constitutional provision limiting the age of individuals who may be elected to judicial office to seventy years. *Id.* at 958. Zielasko, who was older than seventy and sought election as a municipal court judge, brought suit against the Ohio Secretary of State (amongst others) for prospective injunctive relief. In order to run for office, Zielasko was required under Ohio law to file a declaration and petition for candidacy with the secretary of state. *See* Ohio Rev. Code §§ 3513.05, 3513.07. The declaration required Zielasko to attest—under threat of criminal penalty for election falsification—that he was a qualified candidate for the office. The Sixth Circuit found that the challenged constitutional provision and its age requirement must be considered a "qualification" for office and that threat of criminal

11

penalty was sufficient to establish an injury for standing purposes. The *Zielasko* Court further determined that the case could proceed under *Young* because the plaintiffs sought "to enjoin the future enforcement of a state constitutional provision they wished declared unconstitutional." *Id.* at 959. *See Children's Healthcare*, 92 F.3d at 1416, n.10 (distinguishing *Zielasko* on the basis that *Zielasko* sought to have the federal courts enjoin the future enforcement of the alleged unconstitutional Ohio constitutional provision).

As in *Zielasko*, the Defendants' connection with the enforcement of Ohio's sex offender notification and registration requirements is enough to satisfy *Ex Parte Young*. Ohio Rev. Code § 2950.13 sets forth the numerous specific duties of the Attorney General with respect to the registration of sex offenders. Of particular relevance to Plaintiff's claims in this case, § 2950.13 specifies that the Attorney General—in connection with the BCII (and its superintendent, Strickrath) and local law enforcement—is responsible for establishing and operating a sex offender database and adopting rules for the implementation and administration of the provisions pertaining to notification of neighbors. Plaintiff alleges that through these actions, Defendants are falsely notifying the public that she is currently dangerous in violation of her due process rights. Like the plaintiff in *Zielasko*, Doe seeks prospective injunctive relief to enjoin the future enforcement of Ohio Rev. Code § 2950.07(B)(1), the alleged unconstitutional state statute. The Court is satisfied that based on these facts, the *Ex Parte Young* exception applies. *Cf. Connecticut Dept. of Pub. Safety v. Doe,* 538 U.S. 1, 6 (2003) (Petitioners in a challenge to a constitutional challenge to Connecticut's sex offender registry law were the state agencies and officials charged with compiling the sex offender registry and posting it online); *McGuire v. Strange*, Case No. 2:11-cv-1027, 2015 WL 476207, at *7 (finding state actors, including the

Alabama Attorney General, to be a properly named party in a sex offender registry case seeking prospective injunctive and declaratory relief.); *Wallace v. New York*, __ F.Supp.2d__, Case No. 12-cv-5866, 2014 WL 4243564, at *20 (E.D.N.Y. Aug. 28, 2014) (finding that the proper parties to name in a constitutional challenge to a sex offender statute would "[l]ogically . . . be individuals who have implemented the State statutes that supposedly violate the Constitution"). The Court therefore denies Defendants DeWine and Stickrath's motion to dismiss Plaintiff's claims on Eleventh Amendment grounds.

### 2. Sheriff

Doe also brings this lawsuit against the Hamilton County Sheriff in his official capacity for his actions taken under color of state law. As discussed above, Eleventh Amendment immunity applies to states and state officers acting in their official capacities. Although he is a county official, not a state official, the Sheriff contends that he is entitled to Eleventh Amendment immunity. The basis for his contention is that Eleventh Amendment immunity applies to local officials when they are acting as "arms of the state" and that, because he is not afforded any discretion in maintaining the sex offender registry and providing community notification about predators, he is an arm of the state of Ohio for the purposes of this lawsuit. See *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999) ("Where county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State.")

Doe does not dispute that the Sheriff is acting as an arm of the State of Ohio when performing his duties under Ohio's sexual offender registration and notification statutes. Rather, she contends that the *Ex Parte Young* exception to Eleventh Amendment immunity applies to the

13

Sheriff because he has "some connection" with the enforcement of the registration requirements set forth in Ohio Rev. Code § 2950.07(B)(1)—the *Ex Parte Young* threshold. First, the Sheriff is the repository for the information Doe must report. In particular, Doe is required to register with the Sheriff any change in her employment, schooling, or housing under Ohio Rev. Code §§ 2950.04(A)(2), 2950.041, and 2950.05, as well as verify her address with the Sheriff every ninety days, pursuant to § 2950.06(B)(4). All this information then becomes public record open to public inspection and must be included in the internet sex offender database. Ohio Rev. Code § 2950.081(A).

Second, the sex offender registration statutes require the Sheriff to take affirmative action in certain circumstances. For example, if an offender fails to verify his or her information as required by the statute, the Sheriff has the duty to send a written warning to the offender and inform the offender that "a failure to timely verify the specified current address or addresses is a felony offense" and that failure to verify the specified information within seven days will result in the offender being "arrested or taken into custody . . . and prosecuted." Ohio Rev. Code § 2950.06(G)(1). If the offender does not verify his or her information within the seven days, the Sheriff "promptly shall notify the bureau of criminal identification and investigation of the failure" and then "shall locate the offender . . . , promptly shall seek a warrant for the arrest or taking into custody . . . of the offender." Ohio Rev. Code § 2950.06(G)(2). This statutory scheme requires Doe to report her residential and employment addresses to the Hamilton County Sheriff every 90 days. If she does not, then the Sheriff must seek a warrant for her arrest or take her into custody.[4]

---

[4] Based on the explicit statutory requirement that the Sheriff arrest Doe if she fails to comply with the statutory scheme, the Court rejects the Sheriff's argument that although he has some connection to the challenged statute, he has not threatened or is not about to commence criminal proceedings against her. Doe's failure to comply with the

14

Third, the Sheriff has a duty to provide notice to Doe's neighbors and local school officials of her sexual predator status. Ohio Rev. Code § 2950.11. According to Plaintiff, in effect, this means that the Sheriff must communicate to these individuals that Doe is "likely to engage in the future in one or more sexually oriented offenses" because that is the statutory definition of a "sexual predator." Ohio Rev. Code § 2950.01(E) (2006).

Based on these obligations under the statute, the Court concludes that the Sheriff has sufficient connections to the enforcement of Ohio's statutory scheme to invoke the *Ex Parte Young* exception. Consequently, because the Sheriff falls outside the scope of Eleventh Amendment protection and may be sued for the declaratory and injunctive relief requested by Plaintiff, the Court denies the Sheriff's motion to dismiss on Eleventh Amendment grounds. *Cf. Strange,* 2015 WL 476207 at *7 (finding a county sheriff to be a properly named party in a sex offender registry case seeking prospective injunctive and declaratory relief).

### B.     Standing

Having determined that Defendants are not entitled to Eleventh Amendment immunity, the Court must next consider Defendants' claim that the Complaint does not present a justiciable case or controversy. Defendants maintain that while Plaintiff frames the action as being against Defendants for enforcing an unconstitutional law, the gravamen of her Complaint is that the sentencing court improperly designated her a sexual predator. Defendants contend that Plaintiff fails to set forth a justiciable case or controversy because Doe seeks to collaterally attack her

---

reporting requirements would subject her to felony charges under former Ohio Rev. Code § 2950.99, which addresses punishments for offenders who violate the reporting provisions of Megan's Law. *See State v. Howard*, 983 N.E.2d 341, 343 (Ohio 2012) (finding that the former § 2950.99 governs the penalty for failing to comply with the notification requirements for sex offenders originally classified under Megan's Law).

classification, the alleged injury is properly traced to the state sentencing court, and Defendants do not have any ability to reclassify or provide Plaintiff with a hearing.

Article III, § 2 of the Constitution limits the federal judicial power to the adjudication of cases and controversies. One component of the case-or-controversy requirement is standing, which requires a plaintiff to satisfy three elements. "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted). Second, a causal connection must exist between the injury and the conduct complained of. *Id.* In other words, the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id*. (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42 (1976). Finally, it must be likely that the injury will be redressed by a favorable decision. *Id.*

The standing requirements are all met in this case. First, Plaintiff has alleged an injury in fact. Specifically, Plaintiff claims that Defendants publically disseminate false information that she is currently dangerous without providing her with a hearing to prove that she is not. As a result, Plaintiff alleges that she and her four children are prohibited from subsidized housing and she will be required to comply with the notification requirements and pay registration fees for the rest of her life.

Second, the Court finds a sufficient causal connection between the alleged injury and Defendants' conduct, as Plaintiff alleges that Defendants are the individuals who enforce the statutory scheme against her. *See Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 755 (4th

Cir. 2013) (finding procedural due process claim that the plaintiff was reclassified as a sexually violent offender and the classification made public without a procedure by which to challenge these actions to state an injury in fact, fairly traceable to the Virginia statute that the defendant implemented); *Cutshall v. Sundquist*, 139 F.3d 466, 471–72 (6th Cir. 1999) (noting that the traceability requirement requires only an arguable claim of injuries traceable to the state and finding that "[b]ecause it is the state that controls the release of the [registry] information, the alleged injuries are causally connected to the state's conduct"). Finally, if Plaintiff is successful in this action, it is likely that the requested relief—a declaration that Ohio Rev. Code § 2950.07(B)(1) is unconstitutional for failure to provide her with a hearing and/or an order directing the sentencing court to provide her with a hearing—will redress the alleged injury to her due process rights.

The Court therefore will deny Defendants' motions to dismiss based on their claim that Plaintiff has failed to state a justifiable case or controversy. In doing so, the Court agrees with Plaintiff that Defendants misconstrue the nature of her claims in support of their motions to dismiss. Contrary to Defendants' position, Plaintiff does not seek to collaterally challenge or reopen the Ohio sentencing court's judgment/initial classification. Rather, she claims that Ohio's statutory scheme, as enforced by Defendants, results in a current, ongoing due process violation and seeks prospective injunctive relief.

### C. Separation-of-Powers and Res Judicata Doctrines

Finally, the Court is not persuaded that dismissal is warranted based on Defendants' remaining arguments. Defendants argue the Complaint should be dismissed pursuant to the separation of powers and res judicata doctrines.

Defendants first claim that Plaintiff had a full opportunity to litigate her current claims in the state courts, when she was initially classified as a sexual predator in 2006. On this basis, Defendants maintain that the current action is barred by res judicata, which precludes parties from relitigating issues that were or could have been raised in a prior action. *See Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir. 1995) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). However, as discussed above, Defendants misconstrue Plaintiff's claims to the extent that they argue that Plaintiff seeks to relitigate or reopen the Ohio sentencing court's initial classification. Because Plaintiff seeks relief on a separate and distinct cause of action, the Court finds Defendants' res judicata argument without merit. Furthermore, to the extent that Defendants contend that any subsequent hearing on Plaintiff's current dangerousness would violate res judicata principles, such a claim was unavailable to Doe when she was initially classified in 2006 and would not be barred on res judicata grounds. *See Consolidation Coal Co. v. Maynes*, 739 F.3d 323, 327 (6th Cir. 2014) ("the doctrine of res judicata does not preclude parties from bringing claims that did not exist at the time of the prior proceeding").

Defendants' separation of powers argument is also unavailing. Defendants cite the Ohio Supreme Court's decision in *State v. Bodyke*, 933 N.E.2d 753 (Ohio 2010), for the proposition that the relief sought by Plaintiff would result in a separation of powers violation. In *Bodyke*, the Ohio Supreme Court held that the reclassification provisions of Ohio's Adam Walsh Act ("AWA") were unconstitutional. Prior to the AWA's effective date, the Ohio General Assembly directed the attorney general to reclassify existing offenders previously classified by Ohio judges under Megan's Law, Ohio's former statutory scheme, under the AWA. The *Bodyke* Court found the reclassification provisions violated the separation of powers doctrine for two reasons. First,

18

the reclassification scheme vested the executive branch with the authority to review judicial decisions. Second, the law operated to legislatively vacate the final judgments of the judicial branch.

Defendants argue that the relief sought by Plaintiff would likewise violate the separation of powers doctrine in this case. As Defendants see it, Plaintiff "seeks an order from the federal court directing the executive branch of the State to order a trial court to reopen a final judgment, which classified Plaintiff as a sexual predator, in order to reclassify her into another category." (Motion to Dismiss, Doc. 13 at PageID 59.) The Court disagrees. Nowhere in Plaintiff's Complaint does she request that Defendants or any other executive officer order the state judiciary to reopen a final judgment. Unlike *Bodyke,* the instant action also does not present circumstances in which the legislative branch has interfered with the function of the judicial branch. Because Defendants fail to identify how the present action or the relief requested by Plaintiff implicates the separation of powers doctrine, the Court denies Defendants' motions to dismiss on this ground.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motions to Dismiss. (Docs. 12, 13.)

IT IS SO ORDERED.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court