IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jane Doe, | : | Case No. 1:12-cv-846 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting in Part and Denying in |
| | : | Part Defendants' Motions for Summary |
| Mike DeWine, Ohio Attorney General, | : | Judgment and Granting in Part and |
| *et al.*, | : | Denying in Part Plaintiff's Motion for |
| | : | Summary Judgment |
| Defendants. | : | |
| | : | |

This matter is before the Court on the Defendants Mike DeWine's and Tom Stickrath's Motion for Summary Judgment (Doc. 35), Plaintiff Jane Doe's Motion for Summary Judgment (Doc. 37), and Defendant Sheriff Jim Neil's Motion for Summary Judgment (Doc. 42).

Plaintiff Jane Doe pleaded guilty to one count of unlawful sexual conduct with a minor in 2006. Following her guilty plea and a sentencing hearing, Doe was classified by the Ohio trial court as a "sexual predator" pursuant to Ohio's sexual offender registration and notification ("SORN") law. A sexual predator was defined under the then-applicable SORN law as "a person who has been convicted of, or has pleaded guilty to, committing a sexually-oriented offense and **is likely** to engage in the future in one or more sexually-oriented offenses." Ohio Rev. Code ("O.R.C.") § 2950.01(E) (2005) (emphasis added). A sexual predator's classification under this statutory scheme is "permanent" and "in no case" can the "classification or adjudication be removed or terminated." O.R.C. § 2950.09(D)(2) (2005). Therefore, Jane Doe is statutorily prohibited from challenging her classification as a predator who remains currently likely to re-offend. As a sexual predator, Doe is required to register with the State of Ohio every ninety days until her death and is the subject of community notifications. The statutory scheme

1

under which Jane Doe was sentenced in 2006 was only in place for approximately four years from 2003 through 2007.

Jane Doe filed this suit to challenge the constitutionality of one aspect of Ohio's SORN law as applied. This case is not about the wisdom of SORN laws, nor is it about the general constitutionality of such laws. This case also is not about whether Jane Doe was properly adjudicated to be a sexual predator in 2006. Instead, Jane Doe asserts that the Due Process Clause of the United States Constitution requires that she be given an opportunity to establish that she no longer should be classified as a sexual predator because she no longer "**is likely** to engage in the future in one or more sexually-oriented offenses." O.R.C. § 2950.01(E) (2005) (emphasis added). Jane Doe contends that it is unconstitutional to subject her to lifetime registration and notification requirements, resting on the implicit finding that that she currently remains likely to re-offend, without giving her the opportunity to rebut that finding. Significantly, the aspect of the Ohio SORN law Jane Doe challenges only applies to persons adjudicated sexual predators between 2003 to 2007.

# I.      BACKGROUND

## A.      Ohio's Sexual Offender Registration and Notification Statutes

### 1.      Megan's law

The federal Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, more commonly known as the federal Megan's Law after a similar law enacted in New Jersey, required states to adopt registration and community notification requirements for sex offenders or risk losing federal crime-control funds. 42 U.S.C. § 14071. Ohio enacted its own Megan's Law in 1996 and substantially amended it in 2003. Am.Sub. H.B. No. 180, 146 Ohio Laws Part II, 2560, 2601; Am.Sub. S.B. No. 5, 150 Ohio Laws, Part IV, 6558, 6687–6702

(eff. July 31, 2003). Ohio's Megan's Law, as revised, governed the classification, registration, and community notification requirements for a person who was convicted or pleaded guilty to a sexually-oriented offense in Ohio in 2006 when Jane Doe was convicted of sexual assault of a minor.

Under Megan's Law, a sexual offender was classified as a "sexually oriented offender," a "habitual offender," or a "sexual predator," each status respectively assigned to those having a higher risk of re-offending. O.R.C. § 2950.01(B), (D), and (E) (2005). State trial judges classified sexual offenders following a hearing based upon a case-by-case analysis of multiple factors of dangerousness set forth in O.R.C. § 2950.09(B)(3) (2005).[1] At the hearing, sexual offenders and the prosecutor were permitted "to testify, present evidence, call and examine witnesses and expert witnesses, and [to] cross-examine witnesses and expert witnesses." O.R.C.

---

[1] The relevant factors included, but were not limited to, the following:

(a) The offender's or delinquent child's age;
(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the 'offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
(g) Any mental illness or mental disability of the offender or delinquent child;
(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty; [and]
(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct.

O.R.C. § 2950.09(B)(3) (2005).

§ 2950.09(B)(2) (2005).  Sexual offenders were subject to different registry, community notification, and housing restriction requirements based on their classification.

A judge would classify a sexual offender who was not likely to commit another sex offense as a sexually oriented offender.  O.R.C. § 2950.09 (2005).  A sexually oriented offender had to register with the county sheriff once a year for ten years, but was not subject to community notification.  O.R.C. § 2950.07(B)(3) (2007).

A habitual sexual offender was required to register annually for a period of twenty years and was subject to community notification if the judge deemed it appropriate.  O.R.C. §§ 2950.07(B)(2) (2007); 2950.11(A), (F) (2007).

A sexual predator determination had to be made by the judge based on "clear and convincing evidence."  O.R.C. § 2950.09(B)(4) (2005).  A sexual predator was defined as "a person who has been convicted of, or has pleaded guilty to, committing a sexually-oriented offense and **is likely** to engage in the future in one or more sexually-oriented offenses."  O.R.C. § 2950.01(E) (2005) (emphasis added).  A sexual offender classified as a sexual predator in 2006 was required to register personally with the sheriff in the county in which he or she lived, attended school, and was employed every ninety days until death.  O.R.C. §§ 2950.04(A)(1) (2007).

Prior to the 2003 amendments to Ohio's Megan's Law, offenders classified as sexual predators had the right to petition the sentencing court for a hearing to prove that they were no longer likely to commit another sexually oriented offense.  O.R.C. § 2950.09(D)(1) (2002).  The offenders could request a hearing one year "after release from imprisonment, prison term, or other confinement by discharge, parole, judicial release, or any other final release," and again every five years if they were denied reclassification.  *Id.*  The Ohio General Assembly eliminated

a sexual predator's right to re-hearing on current dangerousness by statute in 2003. The amended law provided that "[i]n no case shall the lifetime duty to comply . . . be removed or terminated." O.R.C. § 2950.07(B)(1) (2007). It further stated that "the classification or adjudication of the offender as a sexual predator is permanent and continues in effect until the offender's death and in no case shall the classification or adjudication be removed or terminated." O.R.C. § 2950.09(D)(2) (2005).

### 2.    Adam Walsh Act

In 2007, the Ohio General Assembly replaced Ohio's Megan's Law with the federally-mandated Adam Walsh Act ("AWA") effective January 1, 2008. Ohio's AWA replaced the judicially-determined classification scheme of sexually oriented offender, habitual offender, and sexual predator with a non-discretionary classification scheme of Tier I, Tier II, and Tier III offenders. Classification under Ohio's AWA is based solely on the crime committed, not on the offender's likelihood to re-offend. O.R.C. § 2950.01(E), (F), and (G) (2008). An offender's registration and notification requirements vary based on their tier classification.

As written, the AWA required the attorney general to reclassify sexual offenders who had been classified as sexually oriented offenders, habitual offenders, and sexual predators under Ohio's Megan's Law as Tier I, Tier II, or Tier III offenders, but the Ohio Supreme Court struck down that requirement as unconstitutional. *Ohio v. Bodyke*, 126 Ohio St. 3d 266, 933 N.E.2d 753, 761 (2010). The Ohio Supreme Court also held that the AWA could not be applied to defendants who committed sexual offenses prior to the date of its enactment because to do so would violate the Ohio Constitution. *Ohio v. Williams*, 129 Ohio St. 3d 344, 952 N.E.2d 1108, 1113 (2012). Therefore, offenders classified as sexual predators under Megan's Law remained classified as sexual predators after the enactment of the AWA.

**B.      Facts Relevant to Plaintiff Jane Doe**

**1.      Criminal History and SORN Classification**

On June 13, 2006, Plaintiff Jane Doe pleaded guilty to one count of unlawful sexual

conduct with a minor in the Hamilton County, Ohio Common Pleas Court.  (Doc. 48 at PageID

316.)  Jane Doe was classified as a sexual predator under Ohio's Megan's Law following a court

hearing and was subjected to statutory registration and community notification requirements.

(*Id.* at PageID 315, 328–29.)  She appealed the decision classifying her as a sexual predator, but

that appeal was denied by the Ohio Court of Appeals for Hamilton County.  (Doc. 48 at PageID

319–20.)

As a sexual predator, Jane Doe is required to register with the Hamilton County Sheriff

every ninety days until her death.  O.R.C. §§ 2950.04(A) (2007), 2950.07(B)(1) (2007).  She

must register her name and aliases, social security number and date of birth, current address,

name and address of employer, name and address of school, license plate number of vehicle,

locations where vehicle is habitually parked, driver's license number, professional or

occupational license numbers, email addresses, internet identifiers, and telephone numbers.

O.R.C. § 2950.04(C) (2007).[2]  If Doe fails to register as required under O.R.C. Chapter 2950, she

can be convicted of a felony.  O.R.C. § 2950.99 (2007).  After a written warning, a person who

fails to register must be "arrested or taken into custody . . . and prosecuted."  O.R.C.

§ 2950.06(G)(1) (2007).

The Hamilton County Sheriff's Office and the State of Ohio must disseminate

information contained in their sex offender data bases pursuant to Ohio law.  O.R.C.

§§ 2950.081 (2007), 2950.14(D) (2007).  Both the Sheriff and the State maintain internet

---

[2]  The Hamilton County Sheriff in practice applies the most recent version of the law to collect sex offender data.
However, Plaintiff and the Hamilton County Sheriff agree that the distinction does not impact the factual or legal
issues in this case.  (Doc. 79 at PageID 616 n.4, 617.)

registries/databases that publish information about sex offenders, including their identifying factors, address, and sex offender classification. The State's online registry also can include other information that the Ohio Bureau of Criminal Investigation finds relevant. O.R.C. § 2950.14(B)(6) (2007). The Sheriff and the State subject sexual predators to community notification until the offender's death. O.R.C. § 2950.11(A), (F) (2011). Notice is distributed to individuals and entities within 1,000 feet of the offender's residence, including neighbors, schools, and child care centers. *Id.* The Ohio Attorney General also sends email alerts to the public that include sex offender classifications. *Protecting Ohio's Families*, Mike DeWine, Ohio Attorney General, http://www.communitynotification.com/cap_main.php?office=55149 (June 13, 2017).

Finally, Jane Doe, as a sexual predator, is prohibited from residing within 1,000 feet of a school. O.R.C. § 2950.031 (2007).[3] Moreover, under federal regulations, she is precluded from residing in federally subsidized housing. Two federal regulations prohibit admission into public housing programs "if any member of the household is subject to a lifetime registration requirement under a State sex offender registration program." 24 C.F.R. § 960.204(a)(4); 24 C.F.R. § 982.553(a)(2)(i).[4]

---

[3] This prohibition was amended and re-codified at O.R.C. § 2950.034 in 2007.

[4] The first regulation states as follows:

> (a) Required denial of admission.
>
> * * * *
>
> (4) Persons subject to sex offender registration requirement. The PHA [public housing agency] must establish standards that prohibit admission to the PHA's public housing program if any member of the household is subject to a lifetime registration requirement under a State sex offender registration program. In the screening of applicants, the PHA must perform necessary criminal history background checks in the State where the housing is located and in other States where household members are known to have resided. (See part 5, subpart J of this title for provisions concerning access to sex offender registration records.)

24 C.F.R. § 960.204. Similarly, the second regulation provides in relevant part as follows:

### 2.    Personal Facts

Jane Doe has custody of and resides with her four children, who ranged in age from 2 to 13 as of October 29, 2015.  (Doe Dec., Doc. 38-1 at PageID 259, 261.)  She lived in federally-subsidized public housing at one time, but she was forced to move because of her status as a sexual predator.  (*Id.* at PageID 261.)  Jane Doe's grandmother will permit her and her children to live with her, but they are unable to do so because her grandmother lives in federally-subsidized housing.  (*Id.*; Humphries Dec., Doc. 38-2 at PageID 265.)  Sarah Humphries, a social worker at the Shelter Diversion Program for the Free Store Food Bank, stated in a sworn Declaration that Jane Doe spent three years applying for and staying on the waiting list for federally subsidized house.  (Doc. 38-2 at PageID 264.)  Humphries stated that Jane Doe was denied placement in federally subsidized housing "solely because her sexual predator classification requires her to register for life."  (*Id.*)

---

(a) Denial of admission.

(2) Prohibiting admission of other criminals—

(i) Mandatory prohibition. The PHA must establish standards that prohibit admission to the program if any member of the household is subject to a lifetime registration requirement under a State sex offender registration program. In this screening of applicants, the PHA must perform criminal history background checks necessary to determine whether any household member is subject to a lifetime sex offender registration requirement in the State where the housing is located and in other States where the household members are known to have resided.

* * * *

(ii) Permissive prohibitions.

(A) The PHA may prohibit admission of a household to the program if the PHA determines that any household member is currently engaged in, or has engaged in during a reasonable time before the admission:

* * * *

(3) Other criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity[.]

24 C.F.R. § 982.553.

Jane Doe asserts that she has "not committed any additional sex offenses" since her conviction.  (Doe Dec., Doc. 38-1 at PageID 259.)  She further asserts that she has "been evaluated separately by qualified medical professionals who concluded that I have a low-risk of re-offending."  (*Id.* at PageID 259–60.)  She does not provide medical or psychological expert evidence to support that assertion, but Defendants also do not provide any evidence controverting her assertion.[5]

## C.    Procedural History

On October 31, 2012, Plaintiff Jane Doe initiated this suit against Defendants Mike DeWine, in his official capacity as the Ohio Attorney General, Tom Stickrath, in his official capacity as the Superintendent of Ohio's Bureau of Criminal Identification and Investigations ("BCI"), and Simon Leis, in his official capacity as the Sheriff of Hamilton County, Ohio.  (Doc. 1.)  Jim Neil, the current Hamilton County Sheriff, has been substituted as defendant for Leis. Jane Doe asserts claims pursuant to 42 U.S.C. § 1983 that Ohio's SORN law, specifically § 2950.07(B)(1), violates her procedural and substantive due process rights as applied.  As stated in the Complaint, Jane Doe sought a declaration that her rights had been violated and an injunction ordering the sentencing court to schedule a hearing determine whether she still is likely to re-offend.  (Doc. 1 at PageID 9.)

Defendants moved to dismiss the Complaint asserting that the claims failed on the basis of Eleventh Amendment immunity, lack of standing, separation of powers doctrine, and res judicata.  (Docs. 12, 13.)  On April 15, 2015, the Court issued an Order Denying Defendants' Motion to Dismiss.  (Doc. 22.)  The parties then proceeded to discovery.

The parties filed and briefed cross-Motions for Summary Judgment.  The parties then filed supplemental briefs upon their requests for leave to supplement and at the direction of the

---

[5]  Whether Jane Doe is likely to re-offend is not at issue before this Court.

Court.  These briefs were necessitated by the postponement of the hearing for oral argument, change in legal counsel, overlooked case law, and the evolution of Jane Doe's claims and request for relief.  Jane Doe never provided the Court with specific authority for the relief prayed for initially in the Complaint—that the Court direct the Ohio trial court to hold a classification hearing for Jane Doe to determine whether she remained likely to re-offend.  However, the parties were given the opportunity to address whether the Court could declare unconstitutional O.R.C. §§ 2950.07(B)(1) (2007) and 2950.09(D)(2) (2005), which provide that a sexual predator classification is permanent and cannot be removed.  The Court heard oral argument on May 16, 2017.

## II.    STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant has the burden to show that no genuine issues of material fact are in dispute.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).  The evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 585–87; *Provenzano*, 663 F.3d at 811.

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary

judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson,* 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

## III. ANALYSIS

As a preliminary matter, SORN laws have withstood many, but not all, constitutional challenges. An overview of some of these cases provides context for the analysis of the Ohio SORN law at issue.

The Sixth Circuit held in 1999 that the registration and public notification aspects Tennessee's SORN law did not violate the Double Jeopardy, Ex Post Facto, Bill of Attainder, Due Process, or Equal Protection Clauses of the United States Constitution. *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999) (analyzing a law that was more narrow in scope and contained fewer prohibitions than the SORN laws challenged in more recent cases), *rehearing and suggestion for rehearing denied*, (6th Cir. 1999).

The Supreme Court in 2003 upheld the constitutionality of the public disclosure provision of Connecticut's SORN law against a due process challenge. *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). The Connecticut law conditioned the registration requirements

solely on the fact of conviction for a sexual offense. *Id.* at 4–5. The Supreme Court did not reach the issue of whether the registration requirement violated the defendant's liberty interest. Instead, it held that procedural due process did not require a pre-deprivation hearing regardless of whether a liberty interest existed. *Id.* at 6–8. The Supreme Court stated that a pre-deprivation hearing on the issue of current dangerousness was not required to satisfy procedural due process when the registration requirement was based solely on the fact of conviction. *Id.* at 3–8 (denying claim based on procedural due process, but not addressing whether a substantive due process claim could be stated). "Due process does not entitle [the plaintiff] to a hearing to establish a fact[—current dangerousness—]that is not material under the Connecticut statute." *Id.* at 7.

The next year, the Sixth Circuit applied *Connecticut Department of Public Safety* to uphold Michigan's SORN law against a procedural due process challenge. *Fullmer v. Mich. Dep't of State Police*, 360 F.3d 579 (2004) (finding that the information on the registry website made clear that all sex offenders were listed without exceptions related to the offender's current level of dangerousness). Three years after that, the Sixth Circuit upheld against a substantive due process challenge the Michigan law which required youths who pleaded guilty to sexual offenses to register pursuant to Michigan's SORN law, despite the fact that their guilty pleas were held in abeyance and were subject to revocation pursuant to a juvenile diversion program. *Doe v. Mich. Dep't of State Police*, 490 F.3d 491 (6th Cir. 2007).

However, in 2016, the Sixth Circuit struck down Michigan Sex Offender's Registration Act, as amended in 2011 and 2013, on ex post facto grounds. *See John Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016). The Sixth Circuit starkly concluded that the registration provisions were punitive and that the retroactive application of the law's 2006 and 2011 amendments was unconstitutional:

A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by—at best—scant evidence that such restrictions serve the professed purpose of keeping Michigan communities safe, is something altogether different from and more troubling than Alaska's first-generation registry law [upheld in *Smith v. Doe*, 538 U.S. 84 (2003)].  SORA brands registrants as moral lepers solely on the basis of a prior conviction.  It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families, with whom, due to school zone restrictions, they may not even live.  It directly regulates where registrants may go in their daily lives and compels them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information.

We conclude that Michigan's SORA imposes punishment.  And while many (certainly not all) sex offenses involve abominable, almost unspeakable, conduct that deserves severe legal penalties, punishment may never be retroactively imposed or increased.  Indeed, the fact that sex offenders are so widely feared and disdained by the general public implicates the core counter-majoritarian principle embodied in the Ex Post Facto clause.  As the founders rightly perceived, as dangerous as it may be not to punish someone, it is far more dangerous to permit the government under guise of civil regulation to punish people without prior notice.  Such lawmaking has "been, in all ages, [a] favorite and most formidable instrument[ ] of tyranny."  *The Federalist No. 84*, *supra* at 444 (Alexander Hamilton).  It is, as Justice Chase argued, incompatible with both the words of the Constitution and the underlying first principles of "our free republican governments." *Calder*, 3 U.S. at 388–89; *accord The Federalist No. 44*, *supra* at 232 (James Madison) ("[E]x post facto laws ... are contrary to the first principles of the social compact, and to every principle of sound legislation.").  The retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease.

*Id.* at 705–06.  The Sixth Circuit declined to examine the plaintiffs' other constitutional challenges—including whether the law was unconstitutionally vague, violated the First Amendment, or violated the Fourteenth Amendment—because the analysis would have amounted to dicta, but stated that the plaintiffs' arguments were "far from frivolous and involve matters of great public importance."  *Id.* at 706.[6]

---

[6]  The District Court had concluded that the law did not violate the Ex Post Facto Clause or the guarantee of due process, but it struck down several provisions as unconstitutional, including the provisions making it illegal for sex offenders to reside or loiter within 1,000 feet of school property.  *Id.* at 698–99; *John Does v. Snyder*, No. 2:12-cv-

A.    **Procedural Due Process Claim**

1.    **Summary of Arguments**

Jane Doe's first claim is for a violation of her procedural due process rights. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Due process is implicated "when state conduct 'alters a right or status previously recognized by law.'" *See Cutshall*, 193 F.3d at 479 (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). Due process extends protection to "statutory entitlements which are conferred by the government to meet the needs of recipients." *Baker v. Cincinnati Metro. Housing Auth.*, 490 F. Supp. 520, 531 (S.D. Ohio 1980) (citing *Goldberg v. Kelley*, 397 U.S. 254 (1970) and *Bell v. Burson*, 402 U.S. 535 (1971)), *aff'd*, 675 F.2d 836 (1982). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotation and citation omitted).

Jane Doe alleges that Ohio's SORN law applicable to her violates her procedural due process rights "by publicly proclaiming she is currently dangerous without giving her the opportunity to prove that she is not." (Doc. 1 at PageID 7.) She further alleges that procedural due process requires that she be granted a hearing to prove that she currently is a low-risk to re-offend and is not likely to commit a sexual offense in the future. (*Id.* at PageID 8.) She asserts that her claim for procedural due process is distinguishable from the due process claim rejected in *Connecticut Department of Public Safety* because the current likelihood to re-offend is a material fact under the Ohio Law, but was not relevant under the Connecticut law.

---

11194, CM/ECF Doc. 103 at PageID 5886–90 (E.D. Mich. Mar. 31, 2015) (striking the school safety zone provision as unconstitutionally vague).

Defendants respond that Jane Doe's due process rights have not been violated. They argue that the SORN law in effect for Jane Doe does not implicate a protected liberty or property interest, and therefore, she is not entitled to due process protections. They also argue that Jane Doe was provided with adequate procedural safeguards because she had an evidentiary hearing before a state trial judge before she was adjudicated a sexual predator.

## 2. Protected Liberty or Property Interests

To begin, the stigma of being labeled as a sexual predator is not by itself sufficient to trigger procedural due process protections. The United States Supreme Court has held that stigmatizing damage to a person's reputation caused by a government action or policy, by itself, is not an interest which is entitled to constitutional due process protections. *See Paul*, 424 U.S. at 701 (regarding the plaintiff's inclusion on an "active shoplifters" list posted by the police). Harm or injury to a person's interest in her reputation, even when it is inflicted by a state actor, "does not result in a deprivation of any 'liberty' or 'property' interest recognized by state or federal law." *Id.* at 712. Rather, due process is implicated only when "a right or status previously recognized by state law was distinctly altered or extinguished." *Id.* at 711. This standard announced in *Paul* has become known as the stigma-plus test. Under the stigma-plus test, procedural due process protections are triggered only when "the stigma of damage to a reputation is coupled with another interest[,]" such as the loss of certain employment rights or changes to legal status. *Cutshall*, 193 F.3d at 479. The Sixth Circuit in *Cutshall* found that the now-repealed Tennessee SORN law did not infringe upon an offender's employment interest, because it did not interfere with the offender's right to seek or obtain a job. *Id.* at 479–80.[7] The court also stated in a conclusory manner that the statute did not impose upon the offender's privacy interests. *Id.* at 480–81. Accordingly, the Sixth Circuit held that the plaintiff did not prove that the now-repealed Tennessee law satisfied the stigma-plus test.

Jane Doe contends that the stigma-plus test is satisfied in this case. She argues that being classified as a sexual predator who is likely to re-offend not only imposes a stigma upon her, but

---

[7] "Courts recognizing a constitutionally protected right to employment have done so in very limited circumstances and have dealt with terminations of government employment where either state law or an agreement between the parties purports to limit the ability of the government to terminate the employment." *Cutshall*, 193 F.3d at 479. A government act that "merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Id.*

also harms her liberty or property interests to live in federally subsidized housing and to have a legal status that reflects her present level of dangerousness.

As to the latter argument, Jane Doe cites to a Seventh Circuit decision finding the stigma-plus test to be satisfied by the Indiana SORN law, which required sexually violent predators to report to the police periodically, to notify the police before travelling, and to be prohibited from living 1,000 feet from a school or park. *Schepers v. Comm'r, Ind. Dep't of Corr.*, 691 F.3d 909, 914 (7th Cir. 2012). The plaintiffs in *Schepers* filed suit alleging a due process violation because Indiana provided no procedure for offenders who were not incarcerated to correct errors in the state's sex offender registry. *Id.* The court concluded that the Indiana SORN law implicated a liberty interest because it deprived plaintiffs "of a variety of rights and privileges held by ordinary Indiana citizens" and qualified under *Paul* as an "alteration in legal status that takes the form of a deprivation of rights under state law." *Id.* Ohio's Megan's Law as applied to Jane Doe, similar to the Indiana law, restricts where a sex offender can live and requires the offender to register with the sheriff four times per year or face criminal prosecution. *Compare* O.R.C. §§ 2950.04(A) (2007), 2950.06(A) (2007) *with* Ind. Code §§ 11-8-8-14, 11-8-8-18. These requirements are not imposed upon ordinary citizens and thus would satisfy the stigma-plus test using the *Schepers* analysis.

The *Schepers* decision has not been adopted by, rejected by, or even discussed by the Sixth Circuit. The Seventh Circuit decision in *Schepers* appears upon cursory examination to be in conflict with the much-earlier Sixth Circuit decision in *Cutshall*, but the cases are distinguishable. The Tennessee SORN law, at the time of *Cutshall*, was not as comprehensive or restrictive as the Indiana SORN law discussed in *Schepers*. The *Cutshall* court described the now-repealed Tennessee law as follows:

> [I]t contained six substantive sections, dealing with the content of registry information, verification of registry information, formalities of registry forms, record keeping and reporting of registry information, potential for removal from the registry, and penalties for violating the registration requirements. Noticeably absent in this statutory scheme is an indication that the legislature intended for the Act to have other than a regulatory purpose. The reporting provisions themselves merely require registrants to supply basic information; the burdens imposed are minor, involving only the completion of the appropriate forms. The language of the Act evidences an intent on the part of the legislature to monitor the whereabouts of convicted sex offenders. Moreover, the authority of law enforcement agencies to disclose registry information is limited to situations in which disclosure is necessary to protect the public.

193 F.3d at 474. The Tennessee law contained only registration requirements. Tenn. Code §§ 40-39-101, *et seq.* (1997). It did not prohibit where offenders lived, require them to report to the police before travelling, nor require them to report all changes in housing and schooling, restrictions found in the Indiana law and Ohio's Megan's Law. *See* Ind. Code §§ 11-8-8-18, 35-42-4-11; O.R.C. §§ 2950.031 (2007), 2950.05 (2007). Accordingly, although the Sixth Circuit concluded in *Cutshall* that the former Tennessee law did not impose upon liberty interests, this Court finds that the Ohio SORN law is more similar to the Indiana law at issue in *Schepers* than to the former Tennessee law at issue in *Cutshall*. The Court concludes that the Ohio SORN law implicates a liberty interest under the stigma-plus test because it changes Jane Doe's legal status and imposes a variety of restrictions and obligations on her not imposed on other citizens. Therefore, Jane Doe is entitled to procedural due process protections.

Jane Doe also argues that being classified as a sexual predator infringes upon her right to live in federally subsidized housing. Defendants initially refuted this argument, then "concede[d] for purposes of this lawsuit only that qualified individuals have a constitutionally protected right to participate in federally subsidized housing programs." (Doc. 64 at PageID 411.) Most recently, after a change of legal counsel, Defendants tried to walk back that concession by relying on a single sentence in an unpublished 1994 Sixth Circuit decision,

18

*Boehler v. City of Bowling Green*, No. 93-6570, 1994 WL 409496 (6th Cir. Aug. 4, 1994).  (Doc. 74 at PageID 565.)

The Court does not find *Boehler* to be controlling.  The Sixth Circuit in *Boehler* addressed whether a plaintiff's equal protection rights were violated when she was denied participation in public housing because she owed money to another public housing landlord. 1994 WL 409496 at *2.  The Sixth Circuit held that the group disadvantaged by the regulation denying participation to applicants who owe money to other public housing landlords did not discriminate against a suspect class.  *Id.* at *3.  Relevant to this case, the Sixth Circuit also stated in dicta without further explication that the plaintiff did "not have a constitutionally protected property interest in participating in the Section 8 program."  *Id.*

The *Boehler* decision has not been cited in another federal published or unpublished decision.  More importantly, its dicta regarding the right to participate in public housing is contradicted by a more recent *published* Sixth Circuit decision and other case law from within the Circuit.  "Participation in a public housing program is a property interest protected by due process."  *Woods v. Willis*, 515 F. App'x 471, 478 (6th Cir. 2013); *see also Davis v. Mansfield Metro. Housing Auth.*, 751 F.2d 180, 184 (6th Cir. 1984) (agreeing with the district court conclusion, which was not disputed by defendants upon appeal, that "participation in a public housing program is a property interest protected by due process"); *Bonner v. St. Paul Twp. Vill.*, No. 88-cv-10137-BC, 1988 WL 1577789, at *1 (E.D. Mich. May 16, 1988) (finding for purposes of preliminary injunction that "case law appears to support the proposition that Section 8 benefits constitute a property interest protected by due process"); *Baker v. Cincinnati Metro. Hous. Auth.*, 490 F. Supp. 520, 531–32 (S.D. Ohio 1980), *aff'd on other grounds*, 675 F.2d 836

(6th Cir. 1982) (finding due process interest in entitlement to a Section 8 "certificate for participation" where eligibility requirements are satisfied).

Federal regulations prohibit admission into public housing programs if any member of a household is subject to a lifetime registration requirement under the state SORN law. 24 C.F.R. § 960.204(a)(4); 24 C.F.R. § 982.553(a)(2)(i). Jane Doe stated in her Declaration that she was denied housing placement in federal subsidized housing after three years on the wait list solely because she is subject to lifetime registration as a sexual predator. (Doe Dec., Doc. 38-1 at PageID 261.) She supports her testimony with the Declaration of Sarah Humphries, a social worker who assisted her in the search for housing. Humphries stated that Jane Doe was denied federally subsidized housing solely because of the lifetime registration requirement. (Humphries Dec., Doc. 38-2 at PageID 264–65.) Jane Doe and her children cannot live with her grandmother—who resides in federally subsidized housing—for the same reason. (Doe Dec., Doc. 38-1 at PageID 261; Humphries Dec., Doc. 38-2 at PageID 264–65.) Defendants admitted the veracity of these facts in their Responses to Plaintiff's Proposed Undisputed Facts, and they do not offer rebuttal *evidence*. (Doc. 57 at PageID 392 ¶¶ 33–34; Doc. 58 at PageID 397 ¶¶ 33–34.)[8]

Jane Doe is permanently ineligible for public housing based on her classification as a sexual predator who is likely to re-offend and is subject to lifetime registration requirements. If

---

[8] Defendants now point out that the Housing Authority can deny admission to the subsidized housing program if it determines that a housing member has engaged in "criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents." 24 C.F.R. § 982.553(a)(2)(ii)(3). However, their argument that the Housing Authority would be "unlikely" to grant Jane Doe a voucher because of her prior criminal activity is merely speculative.

Defendants also suggest that Jane Doe would be ineligible for federally subsidized housing because she previously violated a federal regulation requiring a family to "continue to occupy its approved unit" until the end of its lease to remain eligible for housing assistance. 24 C.F.R. § 884.221. Jane Doe vacated federally subsidized housing after she first was classified as a sexual predator. (Doe Dec., Doc. 38-1 at PageID 261.) Defendants imply that Jane Doe violated the terms of her lease by failing to occupy the unit after she was convicted. However, they offer no evidence that the Housing Authority determined Jane Doe to be in violation of the terms of her lease. Lack of continuing eligibility for housing is not necessarily co-extensive with violation of lease terms.

Jane Doe can prove that she no longer is likely to re-offend, then she would not be classified as a sexual predator under Ohio law and would not be subjected to the lifetime registration requirement. Accordingly, she would not be ineligible to live in federally subsidized housing. The Court concludes that Jane Doe has a sufficient property interest to live in public housing for which she otherwise is qualified to satisfy the stigma-plus test.

Because the stigma-plus test is satisfied either under *Schepers* or based on right to participate in public housing, Jane Doe is entitled to procedural due process protections.

### 3.    Due Process Protections Provided

Ordinarily, the determination that due process rights apply does not resolve a procedural due process claim. A district court also must determine whether the procedural protections afforded are constitutionally adequate. *See Mathews*, 424 U.S. at 334–35 (discussion of the factors that dictate what process is due). The Court concludes that Jane Doe is not being afforded sufficient procedural due process at this time. Defendants are correct that Jane Doe initially was afforded due process in the form of an evidentiary hearing in front of the trial judge before she was adjudicated a sexual predator in 2006, but that fact misses the point. Jane Doe does not challenge in this suit that she was denied due process rights or misclassified when she was adjudicated a sexual predator in 2006. However, the statutory definition of sexual predator is "a person who has been convicted of, or has pleaded guilty to, committing a sexually oriented offense that is not a registration-exempt sexually oriented offense and **is likely** to engage in the future in one or more sexually-oriented offenses." O.R.C. § 2950.01(E) (2005) (emphasis added). The fact that Jane Doe received a hearing in 2006 is not dispositive of the issue currently before the Court.

No procedural process is provided for Jane Doe to challenge at a later date the initial determination that she currently is likely to re-offend no matter the changes in her life circumstances.  In fact, the Ohio SORN law applicable from 2003 to 2007 when Jane Doe was convicted and sentenced states that "the classification or adjudication of the offender as a sexual predator is permanent and continues in effect until the offender's death and in no case shall the classification or adjudication be removed or terminated."  O.R.C. § 2950.09(D)(2) (2005); *see also* O.R.C. § 2950.07(B)(1) (2007) (stating that the lifetime duty for sexual predators to comply with registration requirements cannot be terminated).  Accordingly, Jane Doe suffers the stigma of being labeled a sexual predator who is likely to re-offend, and she subjected to a host of restrictions and obligations not imposed upon other citizens, both for the remainder of her life.

Jane Doe offers the uncontested declaration of therapist with twenty years of experience treating and examining sexual offenders.  The therapist asserts that most sex offenders will respond to intervention and that the likelihood that an offender will re-offend decreases with time.  (Ullman Dec., Doc. 37-2 at PageID 249–50.)  Defendant Sheriff Neil concedes that the sex offender therapist's statements are "unremarkable."  (Doc. 45 at PageID 295 (summarizing Ullman Dec., Doc. 37-2).)  Jane Doe has not committed another sexual offense since 2006.  She asserts, without evidentiary support, but also without contradiction, that medical professionals who have evaluated her have determined that she has a low risk to re-offend.  The Court concludes that the failure to provide Jane Doe with any opportunity during her lifetime to challenge her classification as a sexual predator who currently is likely to re-offend violates her procedural due process rights.  The Court's conclusion is consistent with *Schepers*, 691 F.3d at 914, wherein the Seventh Circuit determined that plaintiff offenders' due process rights were violated when they lacked a procedural means to correct errors in the state offender registry.

**B.      Substantive Due Process Claim**

Jane Doe also asserts that Ohio's SORN law applicable to her violates her substantive

due process rights.  The Sixth Circuit has explained substantive due process as follows:

> "The doctrine that governmental deprivations of life, liberty or property are
> subject to limitations regardless of the adequacy of the procedures employed has
> come to be known as substantive due process."  *Bowers v. City of Flint*, 325 F.3d
> 758, 763 (6th Cir. 2003) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211,
> 1216 (6th Cir. 1992) (citation omitted)).  These limitations are meant to provide
> "heightened protection against government interference with certain fundamental
> rights and liberty interests."  *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000)
> (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138
> L.Ed.2d 772 (1997)).  As a result, "Government actions that burden the exercise
> of those fundamental rights or liberty interests are subject to strict scrutiny, and
> will be upheld only when they are narrowly tailored to a compelling
> governmental interest."  *Id.* at 574 (citing *United States v. Brandon*, 158 F.3d 947,
> 956 (6th Cir. 1998)); *see also Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381,
> 393 (6th Cir. 2005).

*Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007).

The list of fundamental rights entitled to substantive due process protections "is short."

*Munoz*, 507 F.3d at 964 (quoting *Seal*, 229 F.3d at 575).  Fundamental rights include the rights to

marry, to have children, to direct the education and upbringing of one's children, to marital

privacy, to use contraception, to bodily integrity, and to abortion.  *Wash. v. Glucksberg,* 521 U.S.

702, 720 (1997).  "When reviewing a substantive due process claim, we must first craft a

'careful description of the asserted right,' and then determine whether that right is 'deeply rooted

in this Nation's history and tradition' and 'implicit in the concept of ordered liberty,' such that it

can be considered a 'fundamental right.'"  *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500

(6th Cir. 2007) (quoting *Reno v. Flores,* 507 U.S. 292, 302 (1993) and *Glucksberg,* 521 U.S. at

721, respectively).  Importantly, the stigma-plus test applies only to procedural due process

claims, not to substantive due process claims.  *Id.* at 502.  "Legislation that infringes on a

fundamental right is reviewed under the strict-scrutiny test and will be invalidated unless it is

'narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Flores*, 507 U.S. at 302). Statutes that do not infringe upon fundamental rights must satisfy only a rational basis review. *Munoz*, 507 F.3d at 966.

The plaintiffs in the *Munoz* case, individuals who had their convictions for criminal sexual conduct in the fourth degree set aside pursuant to Michigan's Setting Aside Convictions Act, argued that their inclusion on the sex offender public registry "burden[ed] their right to privacy and creates difficulties in retaining housing, keeping and finding employment, pursuing educational opportunities, and pursuing family relationships." 507 F.3d at 964. The Sixth Circuit concluded that these allegations were not sufficient to state a claim for a violation of a fundamental right. *Id.* at 964–65; *see also Mich. Dep't of State Police*, 490 F.3d at 499, 501 (refusing to classify as a fundamental right the purported right to free from being labeled as a convicted sex offender when, under a juvenile diversion program, youth who pleaded guilty to sexual offenses were not *convicted* of such offenses). The *Munoz* court applied a rational basis review of Michigan's SORN law because it did not violate a fundamental right. 507 F.3d at 966. The court concluded that Michigan had a rational basis to try to prevent and protect against the commission of future sexual offenses by sex offenders. *Id.* It is worth noting that the *Munoz* plaintiffs did not assert a procedural due process claim.

Applying the case law above, Jane Doe has not established a violation of her substantive due process rights. She has not established that being subject to Ohio's sex offender registration and notification provisions violates a fundamental right regardless of the procedural protections provided. Moreover, she has not established that Ohio lacks a rational basis to enforce its registration and notification requirement. *Cf. Ohio v. Cook*, 83 Ohio St. 3d 404, 700 N.E.2d 570, 581 (1998) (stating that the purpose of Ohio Revised Code Chapter 2950 is to protect the public

against possible recidivism by sexual offenders). Accordingly, the Court will grant summary judgment to Defendants on the substantive due process claim.

**C.      Defendants' Remaining Merits Arguments**

Defendants raise additional arguments to support their Motions for Summary Judgment, which do not focus on due process. The Court must address these arguments because it has concluded that Jane Doe's procedural due process rights were violated.

**1.      Dismissal Stage Arguments**

First, Defendants contend that they are entitled to summary judgment on the basis of Eleventh Amendment immunity, the separation-of-powers doctrine, the collateral attack doctrine, and res judicata. The parties confirmed at the oral argument held on May 16, 2017 that their arguments on these subjects are duplicative of the arguments they made at the dismissal stage. The parties did not identify any facts developed during discovery which would undermine the Court's initial analysis. Accordingly, the Court rejects these arguments for the reasons stated in the Order Denying Defendants' Motions to Dismiss (Doc. 22).

### 2.    *Younger* and *Burford* Abstention

Next, Defendants argue that they are entitled to summary judgment on the basis of *Younger* or *Burford* abstention.  These doctrines arise from *Younger v. Harris*, 401 U.S. 37 (1971), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), respectively.  The *Younger* doctrine holds that federal courts should not enjoin "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989) ("NOPSI")).  The *Younger* doctrine applies in "exceptional" cases.  *Id.*  Defendants have not established that the *Younger* doctrine applies in this case because they have not identified any pending state criminal or civil judicial proceedings.  Registration and notification requirements to which Jane Doe are subject are not the type of proceeding to which *Younger* abstention applies.  "While [the Supreme Court has] expanded *Younger* beyond criminal proceedings, and even beyond proceedings in courts, [the Supreme Court] has never extended it to proceedings that are not judicial in nature."  *NOPSI*, 491 U.S. at 369–70 (internal quotation omitted).

Turning to the *Burford* doctrine, that doctrine holds as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*NOPSI*, 491 U.S. at 361 (internal quotations and citations omitted).  To begin, it is worth noting that Jane Doe could not have raised the constitutional challenge now before the Court in her

earlier state court criminal proceedings. Her claim that she no longer should be classified as a sexual predator because she no longer is likely to re-offend was not ripe at the time she was sentenced. She does not challenge the validity of her sentence or initial classification as a sexual predator in these proceedings. Additionally, Defendants have not identified any timely and adequate state court review procedure which is available for Jane Doe now to challenge the determination that she remains likely to re-offend more than ten years after she was sentenced. Rather, Megan's Law specifically prohibits the reclassification of a sexual predator and the termination of the lifetime duty for a sexual predator to register. O.R.C. § 2950.07(B)(1)( 2007); O.R.C. § 2950.09(D)(2) (2005). The Court will not grant summary judgment to Defendants on the basis of *Younger* or *Burford* abstention.

### 3. 28 U.S.C. § 2254 and 42 U.S.C. § 1983

Defendants assert overlapping lack of subject matter jurisdiction arguments based on the fact that the Jane Doe has asserted her claims pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Both § 1983 and federal habeas corpus statute, 28 U.S.C. § 2254, "provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Defendants first argue that the Court lacks subject matter jurisdiction over Plaintiff's claims because she failed to exhaust the claims in state court and to file them in federal court pursuant to § 2254. Instead, she asserted her due process claims pursuant to § 1983, which does not require exhaustion of state court remedies. Alternatively, Defendants argue that Jane Doe's claims are barred by a rule stated in *Heck* that § 1983 claims based on an unconstitutional conviction or sentence cannot proceed unless the underlying conviction or sentence have been reversed or found invalid.

The Court first will examine whether Jane Doe could assert her claims pursuant to the habeas statute. The Supreme Court held in 1973 that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Thus, habeas is traditionally addressed to issues of persons in custody or confinement. 411 U.S. at 484–88. Jane Doe is no longer in custody or confinement, so habeas does not provide her an avenue for relief. In 2002, the Sixth Circuit held that a plaintiff's claim that the "classification, registration and community notification provisions of Ohio's sexual-predator statute should not apply to him" was not cognizable in a habeas proceeding. *Leslie v. Randle*, 296 F.3d 518, 520–23 (6th Cir. 2002). Other jurisdictions are in accord. *See*, *e.g.*, *Marsh v. United States*, No. CV TDC-14-3559, 2016 WL 247563, at *3 (D. Md. Jan. 20, 2016) ("Because Marsh's claim relates to the requirement to provide notification under SORNA after his release, rather than to the fact or duration of his confinement, it is not properly brought as a *habeas* petition."); *Olmos v. Ryan*, No. CV-11-00344-PHX-GMS, 2014 WL 922867, at *7 (D. Ariz. Mar. 10, 2014) ("Petitioner's First Amendment challenge to SORNA's online registration requirement lacks any nexus to his custody, as required by the text of § 2254(a)."), *appeal filed*, No. 14-15534 (9th Cir. 2014). Defendants do not address or distinguish *Randle* nor similar case law. The Court concludes that Jane Doe's claims are not cognizable in habeas.

Additionally, the Court disagrees with Defendants' argument that *Heck* prohibits Jane Doe from asserting her due process claims pursuant to § 1983. The Supreme Court held in *Heck* as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87. The Supreme Court later extended the *Heck* rule to apply to all cases no matter the type of relief sought "if success in [the] action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). However, the *Heck* rule is inapplicable to Jane Doe's case. A determination that Jane Doe has a procedural due process right to an opportunity to challenge her classification as a sexual predator who currently, more than ten years after her conviction, is likely to re-offend would not impugn the validity of her conviction or her initial classification as a sexual predator.[9]

### 4. *Rooker-Feldman* Doctrine

Next, Defendants argue that the Court lacks jurisdiction pursuant to the *Rooker-Feldman* doctrine. The doctrine derives its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine "bars lower federal courts from conducting appellate review of final state-court judgments." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012). It prevents a district court "from exercising its jurisdiction over a claim alleging error in a state court decision." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (citation omitted). "[O]nly the United States Supreme Court has jurisdiction to correct state court judgments." *Marshall v. Bowles*, 92 F. App'x 283, 284 (6th Cir. 2004). *Rooker-Feldman* is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). To determine the applicability of the *Rooker-Feldman* doctrine, the district court must determine the source of the plaintiff's alleged injury. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

Defendants allege that the source of Jane Doe's injury is the state court's determination that she was a sexual predator who is likely to re-offend. They argue that this Court is barred from re-litigating whether that classification decision was appropriate or made in error. The Court disagrees with this characterization of Jane Doe's claim. She does not seek in this suit to overturn her initiation classification as a sexual predator. Instead, she seeks the opportunity to establish that she no longer is likely to re-offend and no longer should be classified as a sexual predator. Therefore, this action does not seek to review or overturn a state court decision, and it is not barred by the *Rooker-Feldman* doctrine.

### 5. Lack of Indispensable Party

Defendants next assert that the Court lacks subject matter jurisdiction because Jane Doe failed to join the "trial court" and the "Housing Authority" as indispensable parties. (Doc. 74 at PageID 561.) Rule 12(b)(7) of the Federal Rules of Civil Procedure allows dismissal for failure to join an indispensable party under Rule 19. A party is indispensable if: "(1) it is necessary,

---

[9] The cases Defendants cite to the contrary in their briefs and at oral argument do not require a contrary result. For example, in *Williams v. Travis County*, No: A-17-CA-00014-SS, Doc. 10 at 2, 4 (W.D. Tex. April 26, 2017), the plaintiff challenged his conviction for failing to register as a sex offender in a wrongful imprisonment action on the grounds that he had been told that he only had to register for a ten-year period. The *Heck* rule required him to prove his conviction had been reversed or declared invalid before he could sue for money damages. *Id.* at 7. Here, Jane Doe is not imprisoned and is not challenging her conviction or initial sentence.

(2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee." *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). To determine whether dismissal is appropriate under these circumstances, the Court engages in a three-step analysis, the first of which is to determine if the absent parties are required to be joined if feasible. *Loc. 670, United Rubber, Cork, Linoleum and Plastic Workers of Am., AFL-CIO v. Int'l Union, United Rubber, Cork, Linoleum and Plastic Workers of Am., AFL-CIO*, 822 F.2d 613, 618 (6th Cir.1987); Fed. R. Civ. P. 19(a). To make that determination, the Court considers whether:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed R. Civ. P. 19(a). Neither the trial court or the Housing Authority is required to be joined under this standard.

The Housing Authority is not a necessary party. Jane Doe is neither asking the Housing Authority to disregard the applicable housing regulations nor to overturn the applicable housing regulations. Likewise, the state trial court is not a necessary party. Jane Doe is not attacking her initial conviction or sentence.

**D.     Remedy**

The Court concluded in the analysis above that Jane Doe's procedural due process rights are violated by application of Ohio's Megan Law, which affects sex offenders sentenced between 2003 through 2007 only. Jane Doe is prohibited from any opportunity to establish that she no longer qualifies as a sexual predator who currently is likely to re-offend. The Court now must address what remedy is due. Relatedly, the Court must address Sheriff Jim Neil's argument that he is not a proper defendant in part because he cannot help effectuate the proposed remedies.

The remedy issue was not a primary focus of the parties' arguments in written briefs or at the oral argument.  In the prayer for relief in the Complaint, Jane Doe requests that "an Order that a hearing be scheduled in the sentencing court to determine whether Ms. Doe is currently dangerous."  (Doc. 1 at PageID 9.)  Jane Doe has not identified any authority by which the Court could order a state trial court to hold a hearing.

The Court finds the remedy discussion in *Schepers* to be useful in determining how to proceed.  In *Schepers*, the Seventh Circuit held that Indiana's law violated the plaintiffs procedural due process rights because it provided "*no process* whatsoever" for registrants who were not incarcerated to challenge errors published on the state's sex offender registry.  691 F.3d at 911, 915–16 (emphasis in the original).  The appeals court, however, declined to outline in "detail what sort of process the DOC[—the Department of Corrections, the agency responsible to maintain the registry under Indiana law—]must enact."  *Id.* at 917.  Instead, the appeals court left it "open for the parties to determine in further proceedings (or, of course, the court should the parties fail to agree on . . .)" the appropriate procedural process.  Upon remand to the district court, the parties agreed to a procedure whereby the DOC would draft new procedures designed to address the due process defects, submit those new procedures to the plaintiffs for their comments, and then consult with the district court.  *Schepers v. Comm'r, Ind. Dep't of Corrs.*, No. 1:09-cv-1324, CM/ECF Doc. 78 (S.D. Ind. Oct. 10, 2012).  Following the implementation of this process, the district court entered a Final Judgment on August 12, 2013.  *Id.*, CM/ECF Doc. 97.  The district court entered a permanent injunction "requiring the defendant to create an appeal procedure for plaintiffs to challenge factual errors" on their registry listing.  *Id.*  Finally, the district court then immediately concluded that the defendant had created such a procedure to which the plaintiffs did not object.  *Id.*

This case is different in that there is not simply an absence of a statutory procedure for Jane Doe to challenge that she currently is likely to re-offend, but rather there are statutory prohibitions against removing her classification as a sexual predator who is likely to re-offend and against terminating her lifetime registration requirements.  One potential remedy is for the Court to strike down the prohibitions found at O.R.C. § 2950.09(D)(2) (2005) and O.R.C. § 2950.07(B)(1) (2007) as unconstitutional.  Jane Doe suggests on the authority of *Ohio v. Bodyke*, 126 Ohio St. 3d 266, 933 N.E.2d 753, 768 (2010), that the effect of finding these statutory provisions to be unconstitutional would be the reinstatement of the prior version of the statute.  Prior to 2003, sexual offenders could petition the state trial court for a hearing to prove that they were no longer likely to re-offend.  O.R.C. § 2950.09(D)(1) (2002).  However, in *Bodyke*, the Court reinstated prior classifications and registration orders entered by courts.  *Id.* Here, the only state court orders were issued under the statutory scheme whereby Jane Doe could not challenge her classification.  There are no prior court orders to reinstate.

The Court concludes that the parties have not adequately briefed the issues of what additional procedures are due and whether O.R.C. § 2950.09(D)(1) (2002) might apply to Jane Doe by operation of law if the statutory prohibitions barring reclassification are struck down. The Court will set a status conference to determine how to proceed.  It will determine whether Sheriff Jim Neil should remain a party as part of the remedy proceedings.

**IV.    CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment of Defendants Mike

DeWine and Tom Stickrath (Doc. 35) and Defendant Sheriff Jim Neil's Motion for Summary

Judgment (Doc. 42) are hereby **GRANTED IN PART AND DENIED**, Plaintiff Jane Doe's

Motion for Summary Judgment (Doc. 37) is hereby **GRANTED IN PART AND DENIED IN**

**PART**.  Jane Doe is granted summary judgment on her procedural due process claim and

Defendants are granted summary judgment on the substantive due process claim.  The Court will

set a status conference to determine how to proceed on the remedy issue.

IT IS SO ORDERED.


<u>S/Susan J. Dlott</u>

Judge Susan J. Dlott

United States District Court